John R. Haug, admitted *pro hac vice*
David M. Fedder, admitted *pro hac vice*
**DENTONS US LLP**
One Metropolitan Square
211 North Broadway, Suite 3000
St. Louis, Missouri 63102-2741
Phone: (314) 241-1800
Fax: (314) 259-5959
Email: john.haug@dentons.com
Email: david.fedder@dentons.com

Kym Davis Rogers, admitted *pro hac vice*
**DENTONS US LLP**
2000 McKinney Ave., Suite 1900
Dallas, Texas 75201
Phone: (214) 259-0900
Fax: (214) 259-0910
Email: kym.rogers@dentons.com

Bruce A. Salzburg, Wyo. Bar Number 5-1711
**Crowell & Moring LLP**
1604 Pioneer Avenue
Cheyenne, Wyoming 82001
Phone: (307) 996-1400
Fax: (307) 996-1419
Email:<u>bsalzburg@crowell.com</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| THOMAS ASPREY and | ) |
| LESLIE GLUSTROM, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:15-cv-00063-SWS |
| | ) |
| PEABODY ENERGY CORPORATION, | ) |
| *et al*., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT PEABODY ENERGY CORPORATION'S BRIEF IN**
**SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF PLAINTIFFS' COMPLAINT**

Defendant Peabody Energy Corporation ("Peabody") moves the Court, pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(f), to strike portions of Plaintiffs Thomas Asprey's and Leslie Glustrom's (collectively, "Plaintiffs") Complaint (the "Complaint"), as irrelevant, immaterial, impertinent and/or inflammatory.  In support of its Motion, which is filed herewith, Peabody states as follows:

**INTRODUCTION**

Peabody's motion is a straightforward application of black-letter law, seeking to strike inappropriate, immaterial and inflammatory allegations in Plaintiffs' Complaint that bear absolutely no relevance to the claims at issue.  Among the inappropriate allegations in the Complaint are: (i) lyrics to a country song, (ii) references to recordings of musical artists, and (iii) allegations that Peabody "exploits" its labor force and "evade[s] [its] financial responsibilities."  *See* Compl., *Introduction*, n. 1, ¶¶ 13-14 (ECF No. 1 at 2, 5-6).  None of these allegations have *anything* to do with the claims at issue – which pertain to purported unlawful arrests by the Northern Wyoming Community College District police department.  Moreover, such allegations are wholly improper and fly in the face of the pleading requirements set forth in the Federal Rules of Civil Procedure.  The purpose of these allegations is to inflame and/or incite the reader and prejudice Peabody, but such allegations do nothing more than disservice the judicial system by detracting from the facts at issue in the subject litigation (which, sadly, Peabody suspects is the intent).  Accordingly, the Court should strike the subject allegations from Plaintiffs' Complaint.

**BACKGROUND[1]**

On April 28, 2015, Plaintiffs filed the instant action against Peabody, Northern Wyoming Community College District ("NWCCD") and Lieutenant Chad Trebby ("Lt. Trebby") (collectively, "Defendants"), alleging five claims stemming from the NWCCD police department's purported unlawful arrest of Plaintiffs at Peabody's 2013 annual shareholders meeting held on the Gillette campus of the NWCCD.  Specifically, Plaintiffs allege – (I) retaliation for exercise of free speech/expression (violation of the First Amendment / 42 U.S.C. § 1983), (II) false arrest / unlawful seizure (violation of the Fourth and Fourteenth Amendments / 42 U.S.C. § 1983), (III) deprivation of liberty without due process (violation of the Fourteenth Amendment / 42 U.S.C. § 1983 ), (IV) conspiracy to interfere with civil rights (violation of 42 U.S.C. § 1985), and (V) civil conspiracy.  *See generally* Compl. (ECF No.1).

Plaintiffs attended the shareholders meeting with the intention of protesting Peabody's policies and practices and brought with them a banner that read "Peabody Abandons Miners." *See* Compl., ¶¶ 30, 37 (ECF No. 1 at 10, 14).  Following the meeting, Lt. Trebby noticed Plaintiffs near the exit of the presentation hall holding their banner, and instructed them to move to the designated activism area (the "free speech zone") to express their views.  Compl. ¶¶ 37-38 (ECF No. 1 at 14).  Despite Lt. Trebby's instructions, Plaintiffs stopped in the campus parking lot, unfurled their banner, and took photographs with three miners.  Compl., ¶ 42 (ECF No. 1 at 15).  As a result of their conduct, Lt. Trebby arrested Plaintiffs.  Compl., ¶¶ 43-44 (ECF No. 1 at 16-17).  Plaintiffs dispute the propriety of their arrests on the legal bases set forth above.

---

[1] The facts summarized herein are those alleged by Plaintiffs.  Peabody does not, however, admit to the facts pled by Plaintiffs nor does Peabody concede that Plaintiffs accurately describe how the events at issue transpired.

## ARGUMENT

**I.   Standard of Review**

Federal Rule of Civil Procedure 8 establishes the general rules of pleading. Rule 8(a)(2) governs claims for relief, and provides that a complaint must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a)(2); *Pola v. Utah*, 458 Fed. Appx. 760, 762 (10th Cir. 2012) (unpublished). Allegations must be "simple concise, and direct." FED. R. CIV. P. 8(d)(1); *Pola*, 458 Fed. Appx. at 762.

If a party fails to satisfy Rule 8's pleading requirements, Federal Rule of Civil Procedure 12(f) provides grounds to strike the disputed pleading. FED. R. CIV. P. 12(f). Specifically, Rule 12 provides that when a pleading contains information not related to the claims at issue, the Court may, on its own initiative or pursuant to a motion, strike any portions containing "redundant, immaterial, impertinent, or scandalous matter." *Id.*; *In re: Whitaker*, No. 13-11395, 2014 WL 1329363, at *2 (Bankr. N.M. Mar. 28, 2014) (unpublished) (striking irrelevant, immaterial and scandalous allegations in plaintiff's amended complaint). Rule 12(f) is intended to save time and money spent litigating issues that will not affect the outcome of the case. *Whitaker*, 2014 WL 1329363, at *2 (internal citations omitted); *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) (one of the purposes of Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing of those issues prior to trial"). *See Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 676 (D. Kan. 2004) ("The purpose of Rule 12(f) is to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial"). Decisions to grant motions to strike are within the sound discretion of the court. *Stubbs*, 224 F.R.D at 676. *See Pola*, 458 Fed. Appx. at 763 (striking "abusive and offensive language" in a complaint pursuant to the court's inherent authority).

Allegations are deemed immaterial or impertinent when they are "not relevant to resolution of the issue at hand" or they have "no essential or important relationship to the claim for relief." *Lane v. Page*, 272 F.R.D. 581, 587 (D.N.M. 2011); *Judicial Watch, Inc. v. U.S. Dept. of Commerce*, 224 F.R.D. 261, 263 (D.D.C. 2004) (internal citations omitted). Further, courts will not tolerate allegations that constitute impugning and inflammatory statements. *See Judicial Watch,* 224 F.R.D. at 264 (striking from a declaration statements that the court found to be "impermissible attempts to place before the Court irrelevant, impugning and/or inflammatory statements," and finding the subject statements did not "inform the [c]ourt's decision" on the ultimate issue).

Although a showing of prejudice is not required by the Tenth Circuit, there is no question the allegations here are highly prejudicial. *Lane v. Page*, 272 F.R.D. at 598-99 (discussing *Burrell v. Armijo*, 603 F.3d 825, 836 (10th Cir. 2010) (rather than requiring movant to demonstrate prejudice, the court discussed prejudice only with regard to respondent failing to show a basis for protesting the court's decision to strike several paragraphs of the complaint)).[2]

## II. The Court Should Strike Allegations in Plaintiffs' Complaint that are Immaterial, Irrelevant and/or Inflammatory

Plaintiffs' Complaint is riddled with immaterial, impertinent and irrelevant factual allegations against Peabody that have absolutely no bearing on the underlying claims or the facts

---

[2] There is a split in authority outside of the Tenth Circuit over whether a moving party must demonstrate prejudice before relief will be granted under Rule 12(f). Several courts, however, have clearly established that Rule 12(f) does not require a showing of prejudice. *See Lane*, 272 F.R.D. at 598 (Rule 12(f) "does not require that a movant show prejudice, and the advisory committee notes do not contemplate such a requirement."); *see also Atl. Richfield Co. v. Ramirez*, 176 F.3d 481, 1999 WL 273241, *2 (9th Cir. 1999) (unpublished) ("We reject Ramirez' contention that we should require the moving party to demonstrate prejudice in order to justify striking redundant material. Rule 12(f) says nothing about a showing of prejudice and allows a court to strike material sua sponte.").

at issue in this case. Other allegations, in addition to being completely irrelevant, improperly assert inflammatory facts that serve no purpose other than to insult, cast judgment upon and incite prejudice against Peabody. For the reasons set forth herein, Peabody moves to strike the following underlined portions of Plaintiffs' Complaint:[3]

> <u>Then the coal company came with the world's largest shovel
> And they tortured the timber and stripped all the land
> Well, they dug for their coal till the land was forsaken
> Then they wrote it all down as the progress of man.</u>
>
> <u>"And daddy won't you take me back to Muhlenberg County
> Down by the green river where paradise lay?"
> "Well, I'm sorry my son, but you're too late in asking
> Mister Peabody's coal train has hauled it away"</u>
>
> - John Prine, "Paradise[1]

[1] "Paradise" and its direct protest against the environmental impacts wrought by unmitigated strip mining has struck a resonant chord in American culture. Musical and cultural icons including Johnny Cash, John Denver, The Everly Brothers, Roy Acuff, Tom T. Hall, Jimmy Buffett, Dwight Yoakam and John Fogerty, among many others, have recorded versions of the protest song. *See* http://en.wikipedia.org/wiki/Paradise_%28John_Prine_song%29.

1. Peabody Energy Corporation ("Peabody") <u>boasts that it</u> is the world's largest private-sector coal company, and its mining operations in the Powder River Basin in Wyoming are substantial and growing. <u>Peabody's business practices and the effect of its mining operations on the environment have earned the company significant disapprobation among activists and protesters, many of whom engage in constitutionally protected free speech and protest of the company at the annual corporate shareholders meetings</u>.

12. As one of the largest coal companies in the world, Peabody is often the target of protest and dissent. <u>The company is frequently criticized for its destructive environmental policies across the world, as well as its mistreatment and abuse of its current and former labor force, consisting largely of coal miners. Public dissent and protest on these topics raise significant issues of public concern</u>.

13. <u>For example, in 2013 the United Mine Workers of America led rallies against Peabody for orchestrating a scheme by which the company caused the loss of healthcare and pension benefits to its unionized retirees who had devoted their lives to Peabody's Appalachian mining operations. As part of this exploitative</u>

---

[3] The allegations are set out in the order they appear in the Complaint.

6

> and unfair scheme, Peabody created a spin-off corporation for its Appalachian mining operations, Patriot Coal, and saddled it with far more liabilities than assets, thus ensuring the spin-offs inevitable failure and bankruptcy. This deliberate plan to evade the financial responsibilities Peabody owed (and previously guaranteed) to its workers inspired many to conclude that Peabody abandons its miners.[2]

> [2] *See, e.g.*, Tiffany Kary, *Patriot Coal Wins Leave to Cut Retiree Pensions, Benefits*, BLOOMBERG BUSINESS (May 29, 2013, 3:57 MDT), http://www.bloomberg.com/news/articles/20l3-05-29/patriot-coal-wins-approval-to-cut-retiree-pensions-benefits-l-).

> 14. Because of this widely publicized conduct - and many other corporate activities seen by many as detrimental to the environment, the communities in which it operates, and the labor force it exploits - Peabody's meetings in St. Louis have in recent years attracted increasing numbers of critics of the company's labor, environmental, and corporate governance policies. In 2012, for example, nearly 100 people reportedly protested outside the company's headquarters during its annual meeting, expressing views critical of its policies and practices.

> [3] According to New York University professor of finance David Yermack (and co-author of a study titled "Evasive Shareholder Meetings"), this practice is common: "Managers [of companies] may want to avoid the theatrical protests and other campaigns that can generate unfavorable news coverage, so they hold the meetings in faraway places to make it harder to get there." *See* Elizabeth Olson, *Beward When the Annual Meeting Is in Moosejaw*, N.Y. TIMES, May 8, 2014, at F2.

> 17. . . . Coal is one of the largest sources of tax revenue for Wyoming's state and local governments and, unlike Appalachian coal, is significantly subsidized by United States taxpayers.[4]

> [4] The Bureau of Land Management manages the publicly-owned Powder River Basin, and holds auctions to lease the land containing large tracts of coal. These auctions, however, often consist of just one bid from one bidder - Peabody - at extraordinarily low prices. Many believe that taxpayers lose billions of dollars through this process, with the only party to benefit being Peabody. *See, e.g., U.S. taxpayers lose more than $1 billion with BLM OK of Peabody's low-ball bid for Powder River Basin Coal*, IEEFA, June 29, 2012, http://ieefa.org/u-s-taxpayers-lose-more-than-l-billion-with-blm-ok-of-peabodys-low-ball-bid-for-powder-river-basin-coalbasin-coal/.

> 64. To make matters worse, in the months leading up to the filing of this lawsuit, Peabody has threatened Mr. Asprey and Ms. Glustrom (and their undersigned counsel) with legal sanctions as further retaliation should they proceed with enforcing their constitutionally protected rights in court. These retaliatory threats are only a continuation of Peabody's constant and longstanding efforts to silence those critical of its policies and practices.

Compl., *Introduction and* ¶¶ 1, 12-14, 17, 64, nn. 1-4 (ECF No. 1 at 2, 5-7, 21) (emphasis added).

The material underlined above is improper and should be stricken. Plaintiffs' claims relate to a specific event (Peabody's shareholder meeting) that occurred on a specific date (April 29, 2013) and take issue with specific conduct (Lt. Trebby's alleged unlawful arrests of

Plaintiffs), which Plaintiffs claim Peabody is "jointly" responsible for. There are a very specific set of facts relevant to the claims at issue; yet, in an effort to showcase their political agenda, Plaintiffs plead allegations, throughout their Complaint, that bear no relationship to the claims. The subject allegations are *prima facie* improper, as the information has absolutely nothing to do with the arrests at issue and the claims arising from them, and accordingly, falls squarely within the parameters of Rule 12(f). *Anchor Hocking Glass Corp. v. White Cap Co.*, 47 F. Supp. 451, 452-53 (D. Delaware 1942) (striking portions of complaint in a patent infringement case that related to defendant's alleged inducement of the patent inventor to breach his employment contract, finding the allegations were "immaterial to the merit[s] of the [patent] action" and had "no proper place in the trial or disposition of the [] cause of action . . ."); *Gotlin v. Lederman*, 367 F. Supp. 2d 349, 363-64 (E.D. New York 2005) (striking allegations about Medicaid fraud and the Office of the Inspector General investigations as irrelevant and inflammatory in a medical malpractice/false advertising suit); *Stubs*, 224 F.R.D. at 676-77 (striking allegations in an employment discrimination case about an "INS 'raid'" and defendants' purported attempt to "intimidate witnesses" in an companion case, finding these facts "serve[d] no purpose other than to incite unfair prejudice against [d]efendant" and had "nothing to do with th[e] case.").

    **A.**    **Plaintiffs' Citation to Song Lyrics and Cultural Icons is Wholly Irrelevant to the Subject Claims**

Peabody moves to strike the Introduction of the Complaint, as well as footnote number one, as these statements are wholly irrelevant to the claims at issue. The Introduction of the Complaint consists of *lyrics* to a country song. Compl., *Introduction* (ECF No. 1 at 2). After citing to a verse of the song (one that refers to Peabody in a negative manner), Plaintiffs drop a footnote that references information contained on a Wikipedia page, including a list of cover versions of the country song, soundtrack information and other background material on the

8

musical artist John Prine. *Id*. at n.1. Under no reasonable interpretation of the pleading standards is this content acceptable or appropriate. *See Whitaker*, 2014 WL 1329363, at *4 (finding that a complaint should only include "a short and plain statement of facts" relevant to the claim).

Plaintiffs are attempting to shame Peabody and attack the energy industry by citing to song lyrics that tarnish Peabody's name, which is, unquestionably, intended to prejudice Peabody. These allegations rise to the level of absurdity, as they have no bearing whatsoever on the facts in this case, and, accordingly, should be stricken. *See Burrell,* 603 F.3d at 836 (affirming the lower court's decision to strike portions of the complaint that it found had no relevance to the question of sovereign immunity); *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (striking allegations in a securities fraud action that referenced defendant's criminal conviction and income level, finding that those matters did not bear even "remotely on the merits of the case" and that there was "no reason to allow th[e] references to remain in the complaint."). Plaintiffs cannot use this forum as a means to advance their political agenda.

> **B.    Plaintiffs' Citation to News Articles, Inapposite Factual Information and Purported Persuasive Authority is Improper and Immaterial to the Subject Claims**

Peabody also moves to strike footnotes two, three and four, the second sentence of paragraph 17 and paragraph 64, as they are completely irrelevant and have no essential relationship to Plaintiffs' claims. Similar to the averments above, these allegations reach far outside the parameters of relevant material and address issues that, again, have no relevance to this case.

Plaintiffs' citation to irrelevant and immaterial news authority is completely inapt. For example, footnote two cites to a news article that discusses a bankruptcy lawsuit involving a

9

spinoff corporation of Peabody (completely irrelevant to the claims at issue) and accuses Peabody of fraudulent business practices with regard to structuring the spinoff. Compl., n. 2 (ECF No. 1 at 6). Footnote three opines on the general rationale behind companies holding shareholder meetings in remote locations – again, a topic completely unrelated to the propriety of Plaintiffs' arrests. *Id*. at n. 3. Continuing with the impropriety, footnote 4 cites to an article that alleges the federal government accepted a low coal bid from Peabody in 2012, a fact that could not be more far removed from the facts at issue. *Id*. at n. 4 (ECF No. 1 at 7).

Similarly, Plaintiffs' reference to Wyoming's largest source of tax revenue in paragraph 17 is misplaced, as it has no bearing on the facts at issue. *Id*. at ¶ 17. This case has absolutely nothing to do with tax benefits, tax credits or the like, and there is no plausible rationale for including allegations of this nature. *See Lane*, 272 F.R.D. at 587 (allegations have been found immaterial if they contain a statement of unnecessary particulars in connection with that which is material); *Whitaker*, 2014 WL 1329363, at *5 (striking allegations in an amended complaint that the court found to contain "unnecessary particulars" or allegations "immaterial to the [p]laintiff's claims.").

Finally, in paragraph 64, Plaintiffs allege that months prior to their filing the subject suit, Peabody threatened legal sanctions if they pursued certain claims. The facts, as pled, provide proof that these allegations do not support Plaintiffs' claims and are merely intended to prejudice Peabody and improperly bolster their claims. Specifically, the arrests at issue occurred on April 29, 2013. Compl., ¶ 32 (ECF No. 1 at 11). Plaintiffs did not file their Complaint until two years later, on April 28, 2015. The state prosecution of Plaintiffs ended in March 2014, when the charges against Plaintiffs were dismissed by a Wyoming Circuit Court Judge. Compl., at Ex. 1 (ECF No. 1 at 32-37). Plaintiffs admit the alleged "threats" Peabody made occurred in the

"months" leading up to Plaintiffs filing suit.  Compl., ¶ 64 (ECF No. 1 at 21).  Accordingly, these allegations cannot be said to be in support of Plaintiffs' retaliation claim, because, per Plaintiffs' own admission, these alleged "threats" occurred over a year after the alleged unconstitutional activity took place, and months after the prosecution of this case came to a conclusion.

Here, the above-referenced allegations should be stricken as irrelevant.  Simply put, Plaintiffs' claims call into question the propriety of their arrests.  Plaintiffs do not even attempt to draw a parallel between these immaterial allegations and the subject claims, nor could they, because there is no plausible nexus between the facts plead and the claims at issue.

In addition to prejudicing Peabody, the subject allegations do nothing more than disservice the judicial system by detracting from the facts at issue and allowing Plaintiffs to use the judicial system as a forum to advance their political views and social agenda.  This is the antithesis of our court system's proper use.  The Court should strike these allegations to minimize confusion by narrowing the issues for discovery and trial.

    **C.**    **Plaintiffs' Derogatory, Inflammatory and Impugning Allegations are Wholly Improper, Prejudicial and Immaterial to the Subject Claims**

In addition, Peabody moves to strike paragraphs 1, 12, 13, and 14 of the Complaint, as these allegations, in addition to being irrelevant and immaterial, are inflammatory, impugning and highly prejudicial.  As an initial matter, Peabody moves to strike the word "boasts," in the first sentence of paragraph 1, as an improper characterization of Peabody's conduct and as inflammatory, unnecessary surplusage.  *Whitney v. Greater New York Corp. of Seventh-Day Adventists*, 401 F. Supp. 1363, 1371 (S.D. New York 1975) (striking the phrase "took reprisal action against her" from the complaint as "surplusage" under Rule 12(f), finding the language unnecessary and irrelevant to the matter being pled).

Peabody also moves to strike the second sentence in paragraph 1, the second and third sentences in paragraph 12 and the entirety of paragraphs 13 and 14, as improper attempts to characterize Peabody's conduct and reputation in the industry. These allegations amount to nothing more than name calling and finger pointing, and constitute indecorous opinions of Plaintiffs' views on Peabody's **business practices** – which have **nothing** to do with the arrests at issue. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (using Rule 12(f) to strike briefs that "do little more than attempt to impugn . . . integrity"); *Judicial Watch*, 224 F.R.D. at 264 (striking statements the court determined constitute "unsubstantiated opinion").

Further, these allegations are argumentative, scandalous and inflammatory, as Plaintiffs allege, among other things, that Peabody is "exploitative," "destructive" to the environment, that it "mistreat[s]" and "abuse[s]" its work force, and that it conjured up a "deliberate plan to evade [its] financial responsibilities." *Judicial Watch*, 224 F.R.D. at 264 (finding use of terms such as "unethical" and "dishonest" to be "inflammatory and impugning," when used to describe defendant's document release process (pursuant to a FOIA request)); *Global View Ltd. Venture Capital vs. Great Central Basin Exploration*, 288 F. Supp. 2d 473, 481 (S.D. New York 2003) (striking paragraph of complaint that referred to defendants' conduct as "malicious," "outrageous" and "unprincipled," finding that the allegations "amount[] to nothing more than name calling, and do[] not contribute to [plaintiff's] substantive claims."); *Pola,* 458 Fed. Appx. at 763 (notwithstanding that the court afforded *pro se* plaintiff "leniency," allegations attacking the integrity of federal courts would be stricken as abusive); *Holderness v. Birner Dental Mgmt. Serv. Inc*., No. 12-cv-1391, 2013 WL 618162, at *1-2 (D. Colorado February 19, 2013) (unpublished) (striking allegations from a complaint that related to defendant's purported

"unethical practices," finding that "the challenged paragraphs contain gratuitously impugning allegations which are not remotely relevant to this action" and that allowing the allegations to remain in the complaint would force defendant to "litigate [] unrelated events, which would add to the burden on both parties[] during this case."). The purpose of including such allegations is to degrade and call into question Peabody's moral character, as the allegations improperly attempt to frame Peabody as immoral, corrupt and a violator of the law. *See Judicial Watch*, 224 F.R.D. at 263 (allegations of a pleading are considered "scandalous" for the purposes of Rule 12(f) when they unnecessarily reflect on the moral character of another party) (citing 2 MOORE'S FEDERAL PRACTICE § 12.37[3], at 12-97).

Moreover, Plaintiffs' allegation in paragraph 13 that Peabody was behind a "scheme" to take healthcare and pension benefits from workers who had "devoted their lives to Peabody" is, again, intended for no purpose other than to prejudice and disgrace Peabody. Similarly, Plaintiffs' allegations about other protests are intended to draw the Court's attention away from the facts at hand in an effort to garner sympathy for Plaintiffs' political cause. *Schultz v. Braga*, 290 F. Supp. 2d 637, 654-55 (D. Maryland 2003) (striking portion of complaint that referenced a prior incident the defendant was involved in finding, "[i]n light of the fact that in making allegations about the February 20, 2000 incident plaintiffs have chosen to use inflammatory language that is not in keeping with the spirit of notice pleading contemplated by the Federal Rules of Civil Procedure and that is prejudicial to [defendant's] reputation, his motion to strike will be granted."); *Whitaker*, 2014 WL 1329363, at *5 (striking allegations in an amended complaint alleging that defendants violated various laws – none of which related to the subject claims).

The challenged paragraphs contain gratuitously impugning allegations that are not relevant in any way to the parties' alleged conduct in the present case.  The subject averments provide no value in assessing the strength and viability of Plaintiffs' claims and fail to provide a basis for any legal conclusions regarding whether Peabody has violated Plaintiffs' rights.  In addition to being *prima facie* improper, such allegations are harmful to Peabody's reputation, and, even though a showing of prejudice is not necessary, it is obvious that these allegations are highly prejudicial.  Reference to such matters serves no purpose other than to inflame the reader, and give Plaintiffs a platform for their political views and social agenda. Accordingly, these allegations should be stricken.

### III.     Striking the Subject Portions of the Complaint will Promote Judicial Economy

The irrelevant and inflammatory allegations in Plaintiffs' Complaint have far-reaching implications that, without remedy, will impact the efficient administration of this case.  The facts plead in a complaint typically define the scope of permissible discovery.  Here, because of the vast array of irrelevant, immaterial and inflammatory allegations in the Complaint, the scope of discovery will be far broader than necessary or appropriate given the nature of the claims at issue. Inevitably, the overbroad scope of the Complaint will cause protracted discovery disputes that will plague this litigation, which will waste both the Court's and the parties' time and resources. Plaintiffs should not be permitted to impede the judicial process by drawing attention away from the facts at issue in an effort to incite emotion.

Ultimately, Peabody seeks dismissal of Plaintiffs' Complaint, with prejudice, as set out in Peabody's Motion to Dismiss filed herewith.  In the event Peabody's Motion to Dismiss is denied, the Court should strike the above-referenced allegations in Plaintiffs' Complaint and require them to plead pursuant to Rule 8 (*i.e.,* providing a *short and plain* statement of the claim(s)).

Doing so will reduce the risk of prejudice, promote judicial economy, and streamline administration of the proceedings.

## CONCLUSION

For the foregoing reasons, if the Court denies Defendant Peabody Energy Corporation's Motion to Dismiss, Peabody respectfully moves the Court, pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(f), to strike the *Introduction*, ¶¶ 1, 12-14, 17, 64 and nn. 1-4 (as set out in Section II above), in Plaintiffs Thomas Asprey's and Leslie Glustrom's Complaint as irrelevant, immaterial, impertinent and/or inflammatory, and requests such other and further relief as the Court deems just and proper.

Respectfully submitted,

**DENTONS US LLP**

By: */s/ John R. Haug*
John R. Haug, admitted *pro hac vice*
David M. Fedder, admitted *pro hac vice*
One Metropolitan Square, Suite 3000
St. Louis, MO 63102-2741
Phone: (314) 241-1800
Fax: (314) 259-5959
Email: john.haug@dentons.com
Email: david.fedder@dentons.com

and

Kym Davis Rogers, admitted *pro hac vice*
2000 McKinney Ave., Suite 1900
Dallas, Texas 75201-1858
Phone: (214) 259-0900
Fax: (214) 259-0910
Email: kym.rogers@dentons.com

and

15

**Crowell & Moring LLP**

Bruce A. Salzburg, Wyo. Bar Number 5-1711
1604 Pioneer Avenue
Cheyenne, WY 82001
Phone: (307) 996-1400
Fax: (307) 996-1419
Email:bsalzburg@crowell.com

*Attorneys for Defendant Peabody Energy Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served via the Court's electronic filing system, this 2nd day of July, 2015, to the following counsel of record:

| | |
|---|---|
| Darold W. Killmer | Ian K. Sandefer |
| Julian G.G. Wolfson | Donald L. Fuller |
| Killmer, Lane & Newman, LLP | Fuller, Sandefer & Associates |
| 1543 Champa Street, Ste 400 | 242 South Grant Street |
| Denver, Colorado 80202 | Casper, Wyoming 82601 |
| *dkillmer@kln-law.com* | *sandefer@fullersandeferlaw.com* |
| *jwolfson@kln-law.com* | *fuller@fullersandeferlaw.com* |
| | |
| Theodore R. Racines | Christopher C. Voigt |
| Wyoming Attorney General's Office | Crowley Fleck PLLP |
| 2424 Pioneer Avenue, 2nd Floor | 490 N. 31st Street, Ste. 500 |
| Cheyenne, Wyoming 82002 | P.O. Box 2529 (59103-2529) |
| *torey.racines@wyo.gov* | Billings, MT 59101 |
| | *cvoigt@crowleyfleck.com* |

 */s/ John R. Haug*
***Attorney for Defendant Peabody Energy Corporation***