Darold W. Killmer
Julian G.G. Wolfson
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
PHONE (303) 571-1000; FAX (303) 571-1001
Email: dkillmer@kln-law.com; jwolfson@kln-law.com

Donald L. Fuller
Ian K. Sandefer
FULLER, SANDEFER & ASSOCIATES
Attorneys at Law, LLC
242 South Grant Street
Casper, WY 82601
PHONE (307) 265-3455; FAX (307) 265-2859
Email: fuller@fullersandeferlaw.com; sandefer@fullersandeferlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| THOMAS ASPREY; | ) | |
| LESLIE GLUSTROM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-cv-63-SWS |
| | ) | |
| PEABODY ENERGY CORPORATION; | ) | |
| NORTHERN WYOMING COMMUNITY | ) | |
| COLLEGE DISTRICT; and | ) | |
| LIEUTENANT CHAD TREBBY, | ) | |
| in his official and individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT**
**TREBBY'S MOTION TO DISMISS**

Plaintiffs, through their counsel Darold W. Killmer and Julian G.G. Wolfson of KILLMER,

LANE & NEWMAN, LLP, and Donald L. Fuller and Ian Sandefer of FULLER, SANDEFER &

1

ASSOCIATES, P.C., hereby submits their Brief in Opposition to Defendant Trebby's Motion to Dismiss in His Individual Capacity.

## Introduction

Defendant Trebby's qualified immunity motion appears perfunctory, alleging pursuant to Fed.R.Civ.P. 12(b)(6), that Plaintiffs' robust and extensively-pled complaint fails to state any legal claims against him. Although Defendant Trebby's liability in this case is predicated explicitly upon plausible[1] allegations that he arrested Plaintiffs without probable cause and did so in retaliation for their decision to exercise their constitutionally-protected right of free speech, he nevertheless asserts that he is entitled to qualified immunity because the law is not "clearly established." Since Plaintiffs' constitutional claims are based upon long-established bedrock principles of law, Defendant Trebby's Motion should be denied.

## Standard of Review

The Federal Rules of Civil Procedure allow a defendant to file a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "There is a strong presumption *against* the dismissal of claims under this rule." *Blevins v. Reid*, No. 06-cv-00969-MSK-KMT, 2008 WL 2428941, 2008 U.S. Dist. LEXIS 46168, at *9 (D. Colo. June 12, 2008) (citing *Cottrell, Ltd. v. Biotrol Intern., Inc.*, 191 F.3d 1248 (10th Cir. 1999) (emphasis added). When a defendant files a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (citation omitted). Under Fed. R. Civ. P. 8(a)(2), the complaint "must

---

[1] Although "plausibility" is the threshold for defeating the Motion to Dismiss, Defendant Trebby's lack of probable cause to arrest plaintiffs has been definitively adjudicated against him, given the findings of the trial judge in the underlying criminal case.

contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Generally, in the post-*Twombly* and *Iqbal* era, a complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008). "Plausible" does not mean "likely to be true," but is, instead, a nudge just beyond "conceivable." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id*.

Generally, "when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Estate of Booker v. Gomez,* 745 F.3d 405, 411 (10th Cir. 2014); *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The doctrine of qualified immunity "operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Barham v. Town of Greybull,* 2011 U.S. Dist. LEXIS 74484, *12 (D. Wyo., July 11, 2011) (Skavdahl, M.J.) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

## Argument

### Defendant Trebby's Motion to Dismiss Should Be Denied

Defendant Trebby's Motion appears directed only at the First Amendment retaliation claim. No authority or argument relating to any of the other claims against him is forwarded. Defendant Trebby argues that the relevant law governing plaintiffs' First Amendment claim is not clearly established, citing *Reichle v. Howards*, 132 S.Ct. 2088 (2012) as his authority, and that therefore he is entitled to qualified immunity. Defendant's reliance on *Reichle*, however,

misses the mark in this case.[2] The question presented in *Reichle* was whether a there was a clearly established right under the First Amendment to be free from a retaliatory arrest *that is supported by probable cause.* "*Id.*, 132 S.Ct. at 2093 (explaining that "the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause")

In this case, by sharp contrast, Plaintiffs *are not* claiming that they have the right under the First Amendment to be free from a retaliatory arrest that is supported by probable cause; rather, Plaintiffs are claiming that they retain the right under the First Amendment to be free from a retaliatory arrest that *is not* otherwise supported by probable cause.

This specific right—to not be arrested in retaliation for exercising one's First Amendment rights *without probable cause*—has been clearly established by both the United States Supreme Court and the Tenth Circuit. *See Esparza v. Bowman*, 523 Fed. Appx. 530, 536-37 (10th Cir. 2013) (holding that it is clearly established that individuals have the right to be free from retaliatory arrest based on the valid exercise of their First Amendment rights to free speech) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006))

Moreover, Plaintiffs have not only extensively pled that their arrest was without probable cause, but have obtained an court order from the state district court judge presiding over their case finding that there was no probable cause to justify Plaintiffs arrest in this very case under these very circumstances.

Particularly at the Motion to Dismiss stage, where the Court is required to accept as true all well-pleaded facts in the Complaint, this is easily sufficient to deny qualified immunity and

---

[2] Undersigned counsel's law firm was counsel of record for Steve Howards in the *Reichle* matter, during all proceedings including the argument and decision at the United States Supreme Court. Counsel is thus intimately familiar with the facts and issues of the *Reichle* case.

allow the case to proceed to discovery. An officer's reasonableness in making the arrest of plaintiffs is a factual inquiry best answered by the factfinder, not as a matter of law for the purposes of a motion to dismiss. *See e.g.*, *Quezada v. Cnty. of Bernalillo*, 944 F.2d 710, 723 (10th Cir. 1991). This determination in the context of a 12(b)(6) motion requires the Court to determine whether a constitutional violation was pled by accepting all allegations as true and evaluating them in the light most favorable to the plaintiffs. *Kikumura v. Osagie,* 461 F.3d 1269, 1291 (10th Cir. 2006)

> **A. The Complaint Robustly and Plausibly Pleads that There Was No Probable Cause to Arrest**

Although Fed.R.Civ.P. 8(a)(2) requires only that the complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," Plaintiffs' complaint in this matter pleads the requisite elements extensively and specifically.

Relevant to the issue of Defendant Trebby's lack of probable cause to arrest Mr. Asprey and Ms. Glustrom, the Complaint contains the following allegations:

> 45. Mr. Asprey and Ms. Glustrom were not trespassing. They were entitled to be at the shareholders meeting, and were entitled to be present on the college campus, which is on public property.
>
> 46. Mr. Asprey and Ms. Glustrom were not blocking traffic, nor were they violating any legitimate law or regulation. They were arrested because of their expressive activities on issues of public concern; namely for their displaying of the banner which read "Peabody Abandons Miners."
>
> 47. At no point did Mr. Asprey or Ms. Glustrom raise his or her voice or refuse to comply with Defendant Trebby's commands.
>
> 48. Further, at no point did Mr. Asprey or Ms. Glustrom disturb any peace or impede any traffic. As shown in the above photograph with the miners - taken just moments before Mr. Asprey and Ms. Glustrom were arrested - there was, at most, only insignificant, stationary traffic in the parking lot, and not any traffic Mr. Asprey and Ms. Glustrom were or even could have been blocking in any material way while briefly having their photograph taken there.

49. Mr. Asprey and Ms. Glustrom had expressed ideas and words critical of Peabody - ideas and words Peabody had taken every effort in conjunction with NWCCD law enforcement to regulate, restrain and silence from the day that the company decided to hold its meeting in Gillette.

56. Mr. Asprey and Ms. Glustrom were arrested in public, handcuffed, and escorted to the Campbell County jail. Even though they were arrested on only a minor offense, and even though they cooperated with law enforcement while being arrested and did not otherwise present any security or legal risk, Mr. Asprey and Ms. Glustrom were required to spend the night in jail. This deprivation of their freedom was disproportionate to any offense they had even allegedly committed, and deviated from the procedure typically followed by law enforcement under similar circumstances. They had difficulties communicating with their loved ones who were expecting them back in Boulder that night.

57. Mr. Asprey and Ms. Glustrom were deprived of significant liberty interests without due process of law.

60. Fortunately, Judge Wendy M. Bartlett of the Circuit Court of the Sixth Judicial District recognized the frivolousness and lack of legal justification for the charges. After an evidentiary hearing on the matter, the court issued an order dismissing the charges on the ground that their prosecution would have violated the Fourth Amendment because Defendant Trebby had no probable cause to arrest Mr. Asprey and Ms. Glustrom. In a written order, the court recognized the serious implications of the First Amendment as well, writing, "Free speech is one of the most valued rights in the United States." *See* Attachment 1 (Order Dismissing Charges), the contents of which are incorporated herein as if fully set forth.

61. Judge Bartlett continued:

The protest group including the Defendants [Mr. Asprey and Ms. Glustrom] was told they must restrain activism to the designated areas on the campus. There is no evidence the Defendants were engage in "activism" (as defined by Lt. Trebby) when they were arrested. The record indicates that the meeting had adjourned and the Defendants were in the parking lot with three other individuals (wearing anti Peabody t-shirts and posing, one with clenched fists and upraised arms) taking a photograph with the banner. *It is simply that, a photo opportunity. Id.* (emphasis added).

62. With regard to the remedy for Mr. Asprey's and Ms. Glustrom's unlawful arrest, the court concluded, "Because the Court finds the arrests in the present case violated the Defendants' Fourth Amendment rights an[d] there is no evidence that can be suppressed, [t]he only effective remedy is dismissal of the charges." Id.

68. Defendants jointly and on their own accord responded to Plaintiffs' First Amendment-protected activity with retaliation, including but not limited to causing the unlawful arrest of them with no probable cause for such arrest.

70. By unlawfully arresting and causing the continued prosecution of Plaintiffs, Defendants sought to punish Plaintiffs for exercising their First Amendment rights and to silence their future speech and restrict their freedom of expression, and the future speech and expression of others. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment-protected activity.

71. Defendants' conduct violated clearly established rights belonging to Plaintiffs of which reasonable persons in Defendants' position knew or should have known.

78. The actions of Defendants as described herein, while acting under color of law, intentionally deprived Plaintiffs of the securities, rights, privileges, liberties, and immunities secured by the United States Constitution, including their right to freedom from unlawful seizure as guaranteed by the Fourteenth Amendment, in that Plaintiffs were arrested without any reasonable justification or probable cause.

79. Defendants intentionally, knowingly, recklessly, and excessively restrained and detained Plaintiffs without any reasonable justification or probable cause.

80. Defendant Trebby had no facts or circumstances within his knowledge to warrant him to believe that Plaintiffs had committed any offense.

81. Defendants' conduct violated clearly established rights belonging to Plaintiffs of which reasonable persons in Defendants' position knew or should have known.

84. Defendant Trebby's conduct violated the clearly established rights of Plaintiffs of which a reasonable officer in his position would have or should have known.

89. Plaintiffs were deprived of their liberty without due process when they were unlawfully arrested, charged with baseless offenses, and thrown in jail overnight and by the continued prosecution of them caused by the unconstitutional conduct described herein.

91. Defendants' unlawful arrest of Plaintiffs, which led to the deprivation of their liberty, was meritless and unsupported by probable cause or reasonable justification.

> 99. Defendants conspired for the purpose of depriving, either directly or indirectly, Plaintiffs the equal protection of the laws, or of equal privileges and immunities under the laws.
>
> 100. Defendants acted in furtherance of this conspiracy by classifying Plaintiffs according to the content of their speech and expressive activities and then arresting Plaintiffs without probable cause in violation of the constitutionally protected fundamental rights to free speech and expression.
>
> 101. Defendants deprived Plaintiffs of having and exercising the rights and privileges enjoyed by all citizens of the United States.
>
> 102. Defendants were motivated by invidious, discriminatory animus toward Plaintiffs based on the content of their speech and expressive activities.

It would try the Court's patience to entertain a more fulsome pleading alleging a lack of probable cause to make an arrest in violation of the Fourth Amendment, and the supporting materials (especially the Court Order finding as much) buttress the "plausibility" of the allegations. Accordingly, Defendant Trebby's contention that the Complaint fails to sufficiently allege a constitutional violation must be rejected.

**B. The Requirement That A Police Officer Have Probable Cause Before Making an Arrest is Clearly Established in American Constitutional Law**

There are very few constitutional propositions more clearly established than the proposition that a police officer must have probable cause before making an arrest. *See, e.g., United States v. Watson*, 423 U.S. 411, 418-19 (1976)("The cases construing the Fourth Amendment thus reflect the ancient common law rule that a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable ground for making the arrest. *10 Halsbury's Laws of England* 344-345 (3d ed.1955); 4 W. Blackstone, Commentaries *292; 1 J. Stephen, *A History of the Criminal Law of England* 193 (1883); 2 M. Hale, *Pleas of the Crown* *72-74; Wilgus, *Arrest Without a Warrant*. 22 Mich.L.Rev. 541, 547-550, 686-688 (1924);

8

*Samuel v. Payne,* 1 Doug. 359, 99 Eng.Rep. 30 (K B. 1780); *Beckwith v. Philby,* 6 Barn. & Cress. 635, 108 Eng.Rep. 585 (K.B. 1827))." *See also Beck v. Ohio*, 379 U.S. 89, 96 (1964)("An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure on an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment. 'Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely cannot be less stringent than where an arrest warrant is obtained. Otherwise, a principal incentive now existing for the procurement of arrest warrants would be destroyed.' *Wong Sun v. United States,* 371 U. S. 471, 371 U. S. 479-480 (1963).").

Apparently realizing the absurdity of arguing that such bedrock principles are not well established, defendant Trebby instead cites to cases such as *Reichle*, exploring whether arrests <u>with</u> probable cause might still be unconstitutional, or that Trebby had "arguable" probable cause in arresting plaintiffs for showing their protest banner[3]. As explained *supra*, such cases are inapposite, since probable cause in this case was lacking. And, it is well established that an arrest of a party engaged in a peaceful protest violates the protester's fundamental constitutional rights of speech and assembly. See *Fogarty v. Gallegos*, 523 F.3d 1147, 1158, 1159 (10th Cir. 2008) ("The defendants' arguments that the police had probable cause to arrest Fogarty rest only on characterizations of the protest in general, and not on evidence of Fogarty's individual actions. The Fourth Amendment plainly requires probable cause to arrest Fogarty as an individual, not as a member of a large basket containing a few bad eggs. In other words, that

---

[3] Due to the fact-intensive nature of the inquiry as to whether there was "arguable" probable cause to arrest, such a determination cannot be made on a Motion to Dismiss. Without question, the Complaint alleges that there was no probable cause, and Defendant does nothing to even argue that there was probable cause.

Fogarty was a participant in an antiwar protest where some individuals may have broken the law is not enough to justify his arrest. . . . Under Fogarty's version of events–that he was peacefully drumming a samba at a reasonable volume–well-settled constitutional and state-law precedent would have put reasonable officers on notice that they lacked probable cause to effectuate an arrest.").

### C. Defendant Trebby's Arrest of Plaintiffs, Without Probable Cause, Violated Clearly Established Law

Circuit Court Judge Wendy Bartlett's Order[4] dismissing the criminal prosecution against Plaintiffs, after an evidentiary hearing at which Officer Trebby testified, conclusively establishes that the arrest was without probable cause. In relevant part, that Order held that, "Arrest requires justification by probable cause to believe that a person has committed or is committing a crime. *Rodarte v. City of Riverton*, 552 P.2d 1245 (1976) . . . Taking all the [State's] evidence as true, the court simply cannot find that there was probable cause to arrest the Defendants for violating W.S. §6-3-303. . . [T]he Court finds the arrests in the present case violated the Defendants' Fourth Amendment rights…".[5]

---

[4] Judge Bartlett's Order was attached to the filing of the Complaint and made part of the allegations contained therein, and thus is fairly included as a substantive part of Plaintiffs' allegations for purposes of evaluating the sufficiency of the pleadings on a Rule 12(b)(6) motion.

[5] Though not officially reported, the analysis by the 9th Circuit Court of Appeals in *Panagacos v. Towery*, Nos. 11–35527, 11–35538, 2012 WL 6573787, *1, *2 (9th Cir. Dec. 17, 2012) (not reported) is instructive. ("The TAC alleges that Towery infiltrated plaintiffs' peaceful anti-war protest group in order to spy on and disrupt plaintiffs' activities. The TAC alleges, for example, that Towery identified plaintiffs to others in order to facilitate their arrest without probable cause. Rudd allegedly directed Towery's efforts and compiled Towery's intelligence in reports that he disseminated to other government actors. Both men allegedly coordinated with law-enforcement agencies to plan and implement strategies designed to silence the protestors. The district court correctly determined that these allegations are plausibly supported by sufficient factual detail and must be presumed true. *See Iqbal,* 556 U.S. at 678. The TAC gives examples of specific times and places that Towery spied on plaintiffs' meetings. It alleges that defendants met with specifically identified law-enforcement officers and agencies, and identifies specific time frames when these meetings occurred. These factual allegations are sufficient to 'give fair notice and to enable the opposing party to defend itself effectively.' *Starr v.. Baca,* 652 F.3d 1202, 1216 (9th Cir.2011). As the district court noted, Towery and Rudd's direct involvement in information gathering and reporting distinguishes this case from *Iqbal,* where conclusory allegations about the high-level government defendants' involvement were 'not entitled to be assumed true.'. . Plaintiffs have pled a plausible violation of their clearly established First Amendment rights. Plaintiffs have alleged that defendants 'deterred or chilled the plaintiff's political speech' and that such deterrence

In any event, under any conceivable scenario, such Order after an evidentiary hearing disposes of the question as to whether Plaintiffs' current allegations in the Complaint (that the arrest lacked probable cause) are "plausible."

WHEREFORE, Defendant Trebby's Motion to Dismiss based upon Qualified Immunity should be DENIED.

DATED this 3rd day of August 2015.

KILLMER, LANE & NEWMAN, LLP

s/ Darold W. Killmer
_____
Darold W. Killmer
Julian G.G. Wolfson
1543 Champa Street, Suite 400
Denver, Colorado 80202
Phone:  (303) 571-1000
dkillmer@kln-law.com
jwolfson@kln-law.com

Ian Sandefer
Donald Fuller
FULLER, SANDEFER & ASSOCIATES
242 South Grant
Casper, Wyoming 82601
Phone: (307) 265-3455
sandefer@fullersandeferlaw.com
fuller@fullersandeferlaw.com

*Counsel for Plaintiffs*

---

motivated defendants' conduct. . . As a result of defendants' information sharing and coordination with local law enforcement, plaintiffs were allegedly arrested without probable cause. These arrests allegedly disrupted plaintiffs' peaceful protests and deterred their political speech. The TAC's allegations also support a plausible inference that defendants were motivated by an impermissible intent to disrupt plaintiffs' speech activities. Given plaintiffs' strong anti-war message and defendants' alleged illegal actions in purposefully facilitating a campaign of false arrests, it is plausible that Towery and Rudd were motivated by a desire to silence the protesters and not just by a desire to protect military shipments. . . Finally, it is clearly established that intentionally enabling arrests without probable cause in order to suppress speech violates the First Amendment. . .Plaintiffs have also pled plausible violations of their clearly established Fourth Amendment rights. It is clearly established that facilitating arrests without probable cause violates the Fourth Amendment. *See, e.g., Beck,* 527 F.3d at 863–64. The district court also correctly determined that the TAC's allegations that Towery coordinated with local police to covertly break into a private listserve plausibly describe an unconstitutional search.")

# CERTIFICATE OF SERVICE

I hereby certify that the forgoing **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT TREBBY'S MOTION TO DISMISS** was served on August 3, 2015 via CM/ECF to the following:

John R. Haug
David M. Fedder
Rachel Milazzo
DENTONS US LLP
One Metropolitan Square
211 N. Broadway, Suite 3000
St. Louis, MO 63102-2741
(314) 241-1800
(314) 259-5959 (fax)
john.haug@dentons.com
david.fedder@dentons.com
rachel.milazzo@dentons.com

Kym Davis Rogers
DENTONS US LLP
2000 McKinney Ave., Suite 1900
Dallas, Texas 75201
(214) 259-0900
(214) 259-0910 (fax)
kym.rogers@dentons.com

Bruce A. Salzburg
CROWELL & MORING, LLP
1604 Pioneer Avenue
Cheyenne, WY 82001
(307) 996-1400
(307) 996-1419 (fax)
bsalzburg@crowell.com

*Attorneys for Peabody Energy*

Chris Voigt
CROWLEY FLECK PLLP
490 N. 31st Street, Suite 500
Billings, MT 59101
(406) 255-7239
(406) 259-4159 fax
cvoigt@crowleyfleck.com

*Attorney for Northern Wyoming Community College District*

Theodore R. "Torey" Racines
Senior Assistant Attorney General
123 Capitol Building
Cheyenne, WY 82002
(307) 777-7862
(307) 777-8920 fax
torey.racines@wyo.gov

*Attorney for Deputy Chad Trebby*

                              KILLMER, LANE & NEWMAN, LLP

                              *s/ Jesse Askeland*
                              _____
                              Jesse Askeland